SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
BROOKE PURCELL, Cal. Bar No. 260058
AMANDA E. BECKWITH, Cal. Bar No. 312967
ANDREA L. ISAACS, Cal. Bar No. 323788
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
E mail        bpurcell@sheppardmullin.com
              abeckwith@sheppardmullin.com
              aisaacs@sheppardmullin.com

Attorneys for Defendant,
THE FINISH LINE, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHARY MURPHY, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>THE FINISH LINE, INC., WHICH WILL DO BUSINESS IN CALIFORNIA AS THE INDIANA FINISH LINE, INC.; and DOES 1 through 20, inclusive,,<br><br>        Defendant. | Case No.<br><br>**DEFENDANT THE FINISH LINE, INC.'S NOTICE OF REMOVAL**<br><br>*[Removed from Alameda County Superior Court, Case No. RG20061596]*<br><br><br>Complaint Filed:    May 15, 2020 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF AND HIS ATTORNEY OF RECORD:**

PLEASE TAKE NOTICE that Defendant The Finish Line, Inc. ("Defendant") hereby removes the action *Zachary Murphy v. The Finish, Inc., et al.*, pending in the Superior Court of California, County of Alameda, Case No. RG20061596, to the United States District Court for the Northern District of California. Removal is based on the Class Action Fairness Act ("CAFA"). This Court has original subject matter jurisdiction over Plaintiff Zachary Murphy's ("Plaintiff") lawsuit under 28 U.S.C. §§ 1332(d)(2), 1441,

-1-

1453, and 1446, because it is a proposed class action, minimal diversity exists, and the amount in controversy exceeds $5,000,000.  Accordingly, removal is proper based on the following grounds:

## I.    STATEMENT OF JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

1.    On February 18, 2005, the Class Action Fairness Act ("CAFA") was enacted. In relevant part, CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

2.    This Court has jurisdiction over this case under CAFA, 28 U.S.C. section 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), in that it is a civil class action wherein: (1) the proposed class contains at least 100 members; (2) the defendant is not a state, state official or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000; and (4) there is diversity of citizenship between at least one class member and one defendant.  Each of these conditions were satisfied at the time this action was initiated and now at the time of removal.

3.    CAFA's minimal diversity requirement is satisfied when: (1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens, (2) at least one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen, or (3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state.  *See* 28 U.S.C. § 1332(d).

4.    As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

## II.    CLAIMS AND PROCEDURAL HISTORY

5.    On or about May 12, 2020, Plaintiff Zachary Murphy ("Plaintiff") served a putative class action complaint on Defendant.  On May 15, 2020, Plaintiff filed the putative

class action complaint against Defendant in the Superior Court of the State of California, County of Alameda, Case No. RG20061596 (the "Complaint") on behalf of himself and on behalf of all other purportedly similarly situated current and former non-exempt, hourly employees of Defendant in the State of California, a Summons, and Civil Case Cover Sheet. Attached hereto as Exhibits **A-C** are true and correct copies of the Complaint, Summons, and Civil Case Cover Sheet.

6.     On or about June 18, 2020, Plaintiff served a Notice of Ruling of the Court in which the Court set a Complex Determination Hearing for August 18, 2020 and a Case Management Conference on September 22, 2020.  Attached hereto as **Exhibits D** is a true and correct copy of Plaintiff's Notice of Ruling.

7.     On or about June 18, 2020, Defendant filed its Answer to the Complaint in Alameda County Superior Court and served its Answer on Plaintiff that same day.  Attached hereto as **Exhibit E** is a true and correct copy of Defendant's Answer to the Plaintiff's Complaint.

8.     On or about July 23, 2020, Plaintiff served Defendant with a copy of his First Amended Complaint ("FAC").  Attached hereto as **Exhibit F** is a true and correct copy of the FAC.

9.     On or about August 7, 2020, Defendant filed its Answer to the FAC in Alameda County Superior Court.  Attached hereto as **Exhibit G** is a true and correct copy of Defendant's Answer to the FAC.

10.     On or about August 7, 2020, the Alameda County Superior Court reset the Complex Determination Hearing scheduled for August 18, 2020 to September 8, 2020. Attached hereto as **Exhibit H** is a true and correct copy of the Court's order.

11.     Plaintiff's FAC asserts claims for relief arising out of his employment with Defendant, including: (1) failure to pay minimum wages under Labor Code §§ 1182.12, 1194, 1194.2, and 1197; (2) failure to pay overtime wages under Labor Code §§ 510, 1194 and 1198; (3) failure to provide meal breaks under Labor Code §§ 226.7 and 512, (4) failure to permit rest breaks under Labor Code § 226.7; (5) failure to provide accurate itemized

wage statements under Labor Code § 226; (6) failure to pay all wages due upon separation of employment under Labor Code §§ 201, 202 and 203; (7) violation of Business and Professions Code §§ 17200, *et. seq.;* and (8) violations of the Private Attorney General Act under Labor Code § 2698 *et seq.* ("PAGA").

12.    Plaintiff's FAC is styled as a putative class action under Code of Civil Procedure § 382.  Plaintiff seeks to represent a putative class of "[a]ll California citizens currently or formerly employed by Defendants as non-exempt employees in the State of California at any time between April 6, 2016 and the date of class certification." ("Putative Class").[1]  (FAC, ¶ 19.)  Within the Putative Class, Plaintiff also seeks to represent "[a]ll Class Members who separated their employment with Defendants at any time between April 6, 2017 and the date of class certification." ("Waiting Time Subclass") *Id.*, at ¶ 20.

13.    A copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Superior Court of California for the County of Alameda.  **Exhibits A-H** contain all "process, pleadings, and orders" served on Defendant in accordance with 28 U.S.C. § 1446(a).  No other proceedings have been held in this action.

### III.    <u>JURISDICTION PURSUANT TO CAFA IS SATISFIED</u>

14.    Under CAFA, a removing defendant need not submit any evidence of the facts establishing jurisdiction in its notice of removal. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 551 (2014) (A notice of removal "need not contain evidentiary submissions.").  Rather, "[a] defendant's notice of removal need include only a plausible allegation that the jurisdictional facts exists." *Id.*, at 554.  Evidence is required "***<u>only</u>*** when the plaintiff contests, or the court questions, the defendant's allegation." *Id.*  (emphasis added); *Arias v. Residence Inn by Marriott*, 936 F.3d 920 (9th Cir. 2019) (courts may not

---

[1] Plaintiff's definition of the Putative Class includes additional time for which Plaintiff believes the statute of limitations was tolled due to the California Rules of Court Emergency Rule 9.  For purposes of removal, Defendant has estimated the amount in controversy based on the statute of limitations from the date on which Plaintiff filed the Complaint.  This analysis does not include the time during which Plaintiff alleges the statute of limitations period was tolled.

1  remand where notice of removal plausibly alleges the basis for removal, without giving the

2  defendant an opportunity to prove the jurisdictional requirements are satisfied).

3       15.    The United States Supreme Court in *Dart Cherokee* held that "no antiremoval

4  presumption attends cases invoking CAFA, which Congress enacted to facilitate

5  adjudication of certain class actions in federal court," adding that "CAFA should be read

6  'with a strong preference that interstate class actions should be heard in a federal court if

7  properly removed by any defendant.' " *Id.*  Following *Dart Cherokee*, the Ninth Circuit has

8  directed the district courts to "interpret CAFA's provisions under section 1332 ***broadly in***

9  ***favor of removal*** …." *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015)

10  (emphasis added); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir.

11  2015) ("Congress intended CAFA to be interpreted expansively").  In *Bridewell-Sledge v.*

12  *Blue Cross*, 798 F.3d 923 (9th Cir. 2015), the Ninth Circuit held that under *Dart Cherokee*,

13  the district court erred "in its remand orders by applying a 'strong presumption against

14  removal jurisdiction.' "  *See also Moppin v. Los Robles Reg'l Med. Ctr.*, 2015 U.S. Dist.

15  LEXIS 129574, at *4 (C.D. Cal. 2015) ("[N]o presumption against removal exists in cases

16  invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions

17  in federal court.").

18  **A.**    **The Case Is a Proposed Class Action with a Putative Class of At Least 100**

19          **Members, and Defendants Are Not a State, State Official, or Government**

20          **Entity**

21       16.    This action has been styled as a California class action under California Code

22  of Civil Procedure § 382.  (FAC, ¶ 6 ("This is a class action under California Code of Civil

23  Procedure section 382.").)  Code of Civil Procedure § 382 is a state statute authorizing an

24  action to be brought by one or more representative persons as a class action.

25       17.    28 U.S.C. § 1332(d)(5) excludes from CAFA jurisdiction cases in which "the

26  primary defendants are States, State officials, or other governmental entities against whom

27  the district court may be foreclosed from ordering relief; or…the number of members of all

28  proposed plaintiff classes in the aggregate is less than 100."

Case No.

18.     Defendant is neither a state, state official, nor a government entity.

19.     Plaintiff's FAC alleges that "the class is estimated to be greater than one hundred (100) individuals."   (FAC, ¶ 23(a).)   On the basis of its own investigation, Defendant determined there are more than 100 current and former non-exempt employees in California from May 15, 2016 to the present.   Therefore, Plaintiff's proposed class consists of at least 100 members now at the time of removal and at the institution of this civil action.

**B.     Minimum Diversity of Citizenship Exists Here**

20.     CAFA requires minimum diversity of citizenship, pursuant to 28 U.S.C. section 1332(d)(2):

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which –
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

21.     Plaintiff's FAC alleges that he is a resident of California.   (FAC, ¶ 10.) Plaintiff's FAC further alleges that the Putative Class consists of "[a]ll *California citizens* currently or formerly employed by Defendants as nonexempt employees in the State of California at any time between April 6, 2016 and the date of class certification."   *Id*., at ¶ 19 (emphasis added).

22.     Although no *evidence* of domicile is required at the notice of removal stage (*Dart Cherokee*, 135 S.Ct. at 554) "[p]roof of residence in a state is usually thought *prima facie* evidence of domicile." *Bradley Min. Co. v. Boice*, 194 F.2d 80, 84 (9th Cir. 1951); *see also Anderson v. Watt*, 138 U.S. 694, 706 (1891) ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary…."); *Barbosa v. Transp. Drivers, Inc.*, 2015 WL 9272828, at *2 (C.D. Cal. 2015) ("a person's residence is *prima facie* evidence of his or her place of domicile for purposes of diversity jurisdiction") (quoting *Bey v. SolarWorld Indus. Am., Inc.*, 904 F. Supp. 2d 1103, 1105 (D. Or. 2012)).   Furthermore,

Case No.

"a party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885 (9th Cir. 2013). Regardless, allegation of plaintiff's citizenship is sufficient for removal. *Ehrman v. Cox Communs., Inc.*, 932 F.3d 1223 (9th Cir. 2019).

23.    Further, where there are no allegations of citizenship of certain parties in the complaint, a removing party may introduce "objective facts" in support of removal that would tend to show the domicile or citizenship of a party in a particular state. *See Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986) ("the determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes").

24.    Here, the FAC affirmatively discloses that Plaintiff was a resident of California at the time this case was filed. (FAC, ¶ 10.) Accordingly, Plaintiff is now at the time of this removal, and was at the institution of this civil action, a citizen of California for purposes of determining diversity. *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (residence is *prima facie* evidence of domicile for purposes of determining citizenship).

25.    Because Plaintiff resides in California, worked in California for Defendant, and because Plaintiff's proposed class is defined to include persons "currently or formerly" employed in the State of California by Defendant, Defendant may rely on the foregoing presumptions to establish that Plaintiff, and at least some of the putative class members, are now at the time of removal, and were at the institution of this civil action, domiciled in California and therefore citizens of California.

26.     <u>Defendant's Citizenship</u>:  Here, Defendant is, now at the time of this removal, and was at the institution of this civil action, a corporation incorporated under the laws of Indiana.  As a corporation, Defendant is deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).

27.     In *Hertz Corp. v. Friend*, 559 U.S. 77, 92-3 (2010), the Supreme Court clarified the definition of a corporation's "principal place of business" and concluded that the " 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities."  The Supreme Court further clarified that, "in practice" the principal place of business "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Id.*, at 93.

28.     Under the foregoing standard Defendant is a citizen of Indiana for purposes of removal.

29.     Defendant is incorporated in the state of Indiana, and maintains its corporate headquarters in Indianapolis, Indiana.  Defendant's corporate and executive officers are employed in Indiana.  Defendant's administrative functions (including that of legal, payroll, and human resources), are conducted in Indianapolis, Indiana.  Indianapolis, Indiana is also where the actual center of direction, control and coordination for Defendant takes place. This is well established by the following facts:  the corporate headquarters is the actual center of direction, control and coordination of all major human resources, payroll, legal and administrative functions; and the respective officers for these departments work in Indianapolis, Indiana and are responsible for developing policies and protocols for Defendant.  All of the facts alleged in this paragraph are true as of the time of this removal and were also true at the initiation of this civil action.  Accordingly, Defendant's principal place of business is, and was at the institution of this civil action, in the State of Indiana. *See* 28 U.S.C. § 1332(c)(1).

30.     In accordance with the foregoing, Defendant is now at the time of removal, and was at the time of the institution of this civil action, a citizen of Indiana (and not a citizen of California), and Plaintiff and some of the putative class members are now at the time of removal, and were at the institution of this civil action, citizens of California (and not citizens of Indiana).  Thus, the minimum diversity requirement under CAFA is satisfied.

31.     <u>Doe Defendants</u>:  Pursuant to 28 U.S.C. section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. section 1332.  *Fristoe v. Reynolds Metals Co*., 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).  *Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) (citizenship of fictitious defendants disregarded for removal).  Thus, the existence of Doe defendants 1 through 20 does not deprive this Court of jurisdiction.

32.     In accordance with the foregoing, Plaintiff is a citizen of the State of California, while Defendant is a citizen of the State of Indiana (the principal place of business and state of incorporation for Defendant).  Thus, the minimum diversity requirement under CAFA is satisfied.

## C.      The Amount in Controversy Exceeds the $5,000,000 Requirement under CAFA

33.     Without making an admission of liability or damages with respect to any aspects of this case or the proper legal test(s) applicable to Plaintiff's allegations on behalf of himself and the putative class, the amount in controversy exceeds the jurisdictional minimum of this Court as detailed below.

34.     "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdiction threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014).  A defendant need not set forth evidence establishing the amount in its notice of removal.  *Id.*  A defendant is not obliged to "research, state, and prove the plaintiff's claims for damages."  *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994).  A defendant can establish the amount in controversy by

"providing only a short and plain statement of the grounds for removal." *Ehrman v. Cox Commc'ns, Inc.*, 2019 WL 3720013 (9th Cir. Aug. 8, 2019); *see also Dart Cherokee*, 135 S. Ct. at 547 (holding that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and evidentiary submissions are required only if "the plaintiff contests, or the court questions, the defendant's allegations"). Here, Defendant alleges there is more than $5,000,000 in controversy.

35.    CAFA authorizes the removal of class actions in which, among the other factors mentioned above, the *aggregate* amount in controversy for all class members exceeds five million dollars ($5,000,000.00). *See* 28 U.S.C. § 1332(d). By demonstrating that the actual amount in controversy exceeds the threshold, Defendant does not concede the validity of Plaintiff's claims or the likelihood that Plaintiff will recover anything.

36.    "In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *see also Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *3 (E.D. Cal. 2007) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe") (original emphasis); *see also Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy, the Court looks to what the plaintiff has alleged, not what the defendants will owe") (aff'd by 631 F.3d 1010 (9th Cir. 2011)).

37.    In the Ninth Circuit, the amount in controversy is determined "at the time of removal." *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). In *Chavez v. JPMorgan Chase*, 888 F.3d 413, 417 (9th Cir. 2018), the Ninth Circuit held "[t]hat the amount in controversy is assessed at the time of removal does not mean that the mere futurity of certain

classes of damages precludes them from being part of the amount in controversy." *Chavez*, 888 F.3d at 417 (original emphasis). *Chavez* held that "the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Id*., at 414-15. These principles were affirmed again by the Ninth Circuit in *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785 (9th Cir. 2018).

38.     Plaintiff's pleadings in this action fail to affirmatively disclose the amount in controversy or information from which Defendant could readily ascertain the amount in controversy without independent investigation and analysis. Plaintiff's Complaint and FAC were "indeterminate" as to whether federal jurisdiction under 28 U.S.C. § 1332(d) existed within the meaning of *Harris v. Bankers Life & Cas. Co*., 425 F.3d 689 (9th Cir. 2005) and *Roth v. CHA Hollywood Med. Ctr., L.P*., 720 F.3d 1121 (9th Cir. 2013).

39.     Defendant provides the following calculations only to demonstrate that the amount in controversy in this case easily exceeds the jurisdictional amount in controversy under CAFA jurisdiction. Defendant makes no admission of any liability or damages with respect to any aspect of this case, or to the proper legal test to be applied to Plaintiff's claims. Nor does Defendant waive its right to ultimately contest the proper amount of damages due, if any, should Plaintiff prevail with respect to any of her claims.

40.     Defendant independently determined based on its own business records that Plaintiff's proposed Putative Class is comprised of approximately 5,612 current and former employees in California from four years preceding the filing of the Complaint to the present.

41.     Defendant independently determined based on its own business records that Putative Class members worked a total of approximately 218,399 bi-weekly pay periods at an average hourly rate of $13.31 at any given time during the four years prior to the filing of the Complaint.

42.     Based on its own business records, Defendant determined that Plaintiff's proposed Waiting Time Subclass is comprised of approximately 3,299 former Putative Class members between May 15, 2017 to the present.

Amount in Controversy for Rest Period Premiums

43.     Rest breaks under California law are required for non-exempt employees who work three and a half (3 ½) or more hours in a day.  Non-exempt employees are entitled to a rest period of ten (10) minutes for each four (4) hours, or major fraction thereof, that they work in a day.  *See* California Wage Orders, § 12.  California law requires employers to pay employees one additional hour of pay at the employee's regular rate of compensation for each workday that a rest period that is required to be provided is not provided.  Cal. Labor Code § 226.7.

44.     Plaintiff alleges that "Defendant failed to provide Plaintiff and class members timely, uninterrupted, on-the-clock rest period of no less than ten minutes for every four hours worked, or every major fraction thereof."  (FAC, ¶ 31.)  Plaintiff further alleges "Plaintiff and Class Members did not receive a ten (10) minute rest period for every four (4) hours or major fraction thereof worked."  *Id.,* at ¶ 62.  Plaintiff claims that as a consequence, Defendant "failed to pay Plaintiffs [*sic*] and class members all rest break premiums due for rest period violations under Labor Code section 226.7(b) and section 12 of the applicable IWC Wage Order."  *Id.*, at ¶ 64.

45.     In *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094 (2007), the California Supreme Court held that the premiums due under Cal. Labor Code § 226.7 are compensatory wages for statute of limitations purposes and therefore have a three year statute of limitations period.  *See* Cal. Code Civ. Proc. § 338(a).

46.     However Plaintiff asserts that Defendant's alleged Labor Code violations "constitute unlawful and/or unfair business practices" under Business and Professions Code §§ 17200, *et seq.* and thus seeks restitution for Plaintiff and the Putative Class.  (FAC, ¶¶ 83-85.)  California District Courts are split as to whether the four year statute of limitations under California Business & Professions Code § 17200 will extend the time to seek unpaid

meal and rest period premiums.   Cal. Bus. & Prof. Code § 17208; *compare Horton v.*
*NeoStrata Co*., 2017 WL 2721977 (S.D. Cal. 2017) and *Dittmar v. Costco Wholesale Corp*.,
2016 WL 3387464 (S.D. Cal. 2017) with *Parson v. Golden State FC, LLC*, 2016 WL
1734010 (N.D. Cal. 2016) and *Guerrero v. Halliburton Energy Servs. Inc*., 231 F. Supp. 3d
797 (E.D. Cal. 2017).

47.     Because the jurisdictional amount in controversy is determined based on what
Plaintiff alleges, not what he will ultimately recover, a four year limitations period is
appropriate for jurisdictional purposes.   Therefore, the relevant time period to calculate
Plaintiff's amount in controversy for alleged rest period violations is from May 15, 2016 to
the present.

48.     Defendant independently determined based on its own business records and
on the allegations within Plaintiff's FAC that the amount in controversy for rest period
premium damages is at least $5,813,781 based on one missed rest break per week (218,399
pay periods x 2 weeks per pay period x 1 missed rest period per week x average $13.31
hourly rate).

49.     Therefore, the amount in controversy for Plaintiff's rest period premium
damages claim alone also exceeds the jurisdictional minimum of $5,000,000.

Meal Periods:

50.     California law requires employers to pay employees one additional hour of
pay at the employee's regular rate of compensation for each workday a meal period that is
required to be provided is not provided.   Labor Code § 226.7.   California law requires
provision of meal breaks to non-exempt employees who work more than five hours in a
workday. Cal. Labor Code § 512.   Plaintiff alleges that "Defendant failed to provide Plaintiff
and class members timely, uninterrupted, off-duty meal periods of no less than thirty minutes
before their fifth hour of work."   (FAC, ¶ 29.)

51.     Similar to Plaintiff's rest period allegations, Plaintiff alleges that Defendant
violated California Business & Professions Code §§ 17200 *et seq.* for the alleged failure to
provide meal periods.   (FAC, ¶ 83(c).)   As noted above, the limitations period for a claim

Case No.
NOTICE OF REMOVAL

1  under California Business & Professions Code § 17200 is four years, and the appropriate

2  period to use for determining the amount in controversy.  Cal. Bus. & Prof. Code § 17208.

3      52.    Therefore, Defendant independently determined based on its own business

4  records and on the allegations within Plaintiff's FAC that the amount in controversy for meal

5  period premium damages is at least $5,813,781 based on a conservative one missed meal

6  periods per week (218,399 pay periods x 2 weeks per pay period x 1 missed meal period per

7  week x average $13.31 hourly rate).

8      53.    Therefore, the amount in controversy for Plaintiff's meal period premium

9  damages claim alone also exceeds the jurisdictional minimum of $5,000,000.

10     54.    Defendant would be justified in using a 100% violation rate in computing the

11  amount in controversy based on the nature of Plaintiff's allegations that Putative Class

12  Members "did not receive compliant meal periods for each five hours worked per day as a

13  result of, among other things, lack of proper coverage and scheduling of meal periods during

14  these employees' shifts and interrupted meal periods."  (FAC, ¶ 55.)  *See Coleman*, 730 F.

15  Supp. 2d at 1149 (C.D. Cal. 2010) ("courts have assumed a 100% violation rate in

16  calculating the amount in controversy when the complaint does not allege a more precise

17  calculation"); *see also Sanchez v. Russell Sigler, Inc*., 2015 U.S. Dist. LEXIS 55667, *16

18  (C.D. Cal. Apr. 28, 2015) ("Defendant's use of a 100% violation rate is proper in this case

19  because Plaintiff's complaint alleges universal deprivation of meal and rest periods");

20  *Mortley v. Express Pipe & Supply Co*., 2018 WL 708115, at *4 (C.D. Cal. 2018) (100%

21  violation rate proper when allegations are "routine and systematic violations" of California's

22  meal and rest period laws).  Nonetheless, although Defendant could have used a 100%

23  violation rate, instead it used only a 20% violation rate as the amount in controversy is met

24  by assuming one violation per week.

25     Waiting Time Penalties

26     55.    Under Cal. Labor Code § 203, "If an employer willfully fails to pay, without

27  abatement or reduction, in accordance with Sections 201 [or] 202…any wages of an

28  employee who is discharged or who quits, the wages of the employee shall continue as a

penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

56.     Plaintiff alleges that Defendant "willfully failed to pay Plaintiff and Waiting Time Subclass all their earned wages upon termination, including, but not limited to, proper overtime compensation, either at the time of discharge or within seventy-two (72) hours of their leaving Defendants' employ."  (FAC, ¶ 75.)  Thus, Plaintiff alleges that "Plaintiff and Waiting Time Subclass members are entitled to recover from Defendant the statutory penalty which is defined as Plaintiff's and Waiting Time Subclass members' regular daily wages for each day they were not paid, at their regular hourly rate of pay, up to a thirty (30) day maximum pursuant to Labor Code § 203."  *Id.*, at ¶ 78.

57.     The statute of limitations for Plaintiff's waiting time penalties claim is three years.  Labor Code § 203(b); *Pineda v. Bank of Am., N.A.*, 50 Cal.4th 1389, 1390 (2010). Based on the three year statute of limitations and the time frame alleged by Plaintiff, there are approximately 3,409 alleged members of the Waiting Time Subclass, whose employment terminated in the relevant time frame, between May 15, 2017 and the present.

58.     Therefore, Defendant independently determined based on its own business records and on the allegations contained within Plaintiff's FAC that Plaintiff alleged an amount in controversy for waiting time penalties damages (exclusive of interest) of approximately $10,538,326 (3,299 alleged Waiting Time Subclass members x $106.48 per day [average hourly rate = $13.31 hourly rate x 8 hours] x 30 days).

Wage Statement Penalties

59.     Labor Code § 226(e) provides for penalties in the amount $50 for each initial alleged wage statement violation to an employee, and $100 for each subsequent violation, up to a maximum $4,000.  Plaintiff alleges that Defendant "knowingly and intentionally failed to comply with Labor Code section 226(a) on wage statements that it provided to Plaintiff and Class Members."  (FAC, ¶ 68.)  Plaintiff further alleges Defendant "failed to correctly state the employer's entity name, gross and net wages earned, and all applicable

Case No.

NOTICE OF REMOVAL

hourly rates in effect and the number of hours worked at each hourly rate by Plaintiff and class members." *Id.*

60.     The statute of limitations for Plaintiff's wage statement penalties claim is one year.  Cal. Code Civ. Proc. § 340(a).  Based on the one year statute of limitations and the time frame alleged by Plaintiff, there are approximately 2,167 alleged Putative class members were employed by Defendant from May 15, 2019 to the present.

61.     For purposes of removal, Defendant justified in using a 100% violation rate in computing the amount in controversy based on the nature of Plaintiff's allegation that every Putative Class member received at least one late and/or missed meal and rest period without premium pay.  (FAC, ¶¶ 55-57, 62-65.)  Accordingly, it is reasonable to assume that Plaintiff has alleged that every wage statement for all employee would be noncompliant. *Mejia v. DHL Express (USA)*, 2015 WL 2452755, at *5 (C.D. Cal. May 21, 2015) ("if Defendant had a uniform policy of failing to provide rest periods, as discussed above, the wage statements that Defendant provided would necessarily have been inaccurate 100% of the time because each wage statement would have failed to include compensation for the missed rest break.").

62.     Therefore, Defendant independently determined based on its own business records and on the allegations contained within Plaintiff's FAC that Plaintiff alleged an amount in controversy for wage statement penalties damages of approximately $8,668,000 ($4,000 x 2,167 Putative Class members).

Amount in Controversy for Plaintiff's Other Claims

63.     In addition to the claims identified above, Plaintiff alleges that he and the Putative Class were not paid minimum and overtime wages in accordance with California law, and that they were not provided with timely and accurate wage statements in violation of Cal. Labor Code § 226.  (FAC, ¶¶ 36-49.)

64.     Labor Code § 1194 states that an employee receiving less than the legal minimum wage or the legal overtime wage is entitled the recover the amount owed in a civil action.

65.     For these reasons, Plaintiff's claim for unpaid minimum and overtime wages further increases the amount in controversy beyond the jurisdictional minimum of $5,000,000.

<u>Amount in Controversy for Attorneys' Fees</u>

66.     Plaintiff also alleges an entitlement to attorneys' fees.  (*See* generally FAC, Prayer for Relief.)  Under Ninth Circuit precedent, a plaintiff's claim for attorneys' fees must be included in the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").  In *Fritsch*, the Ninth Circuit held that future attorneys' fees that are claimed, but not accrued at the time of removal, must be considered in the amount in controversy. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 -796 (9th Cir. 2018).

67.     Courts may use a 25% benchmark of total recovery when estimating the attorneys' fees in controversy.  *Greene v. Harley-Davidson, Inc.*, No. 20-55281, fn. 4 (9th Cir. July 14, 2020); *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013); *Rodriguez v. Cleansource, Inc.*, 2014 WL 3818304, at *4 (S.D. Cal. 2014); *Marshall v. G2 Secure Staff, LLC*, 2014 WL 3506608 (C.D. Cal. 2014); *Jasso v. Money Mart Exp., Inc.*, 2012 WL 699465 (N.D. Cal. 2012); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. 2018); *Ramirez v. Benihana Nat'l Corp.*, 2019 WL 131843, at *2 (N.D. Cal. 2019); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees").  Thus, an additional minimum amount of $7,708,472 must be included in the amount in controversy ([$5,813,781 alleged rest period premiums + $5,813,781 alleged meal period premiums + $10,538,326 alleged waiting time penalties + $8,668,000 alleged wage statement penalties] x 25% = $7,708,472)].

68.     And the same amount for alleged attorneys' fees is in controversy using the "lodestar" method of fee computation.  *See Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66 n.11 (2008) ("Empirical studies show that, regardless whether the percentage method or

1   the lodestar method is used, fee awards in class actions average around one-third of the

2   recovery"); *see also Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293, at *5 (S.D. Cal.

3   2013) ("California has recognized that most fee awards based on either a lodestar or

4   percentage calculation are 33 percent and has endorsed the federal benchmark of 25

5   percent").

6        69.    For all of the forgoing reasons, Defendant alleges that the amount placed in

7   controversy by Plaintiff is significantly greater than the jurisdictional minimum of

8   $5,000,000 required by CAFA, both at the time removal and at the institution of this civil

9   action.  The amount in controversy requirement for CAFA is therefore satisfied.

10  **D.**    **No CAFA Exceptions Apply**

11       70.    CAFA contains a number of exceptions to its grant of original jurisdiction,

12  contained in 28 U.S.C. §§ 1332(d)(3)-(4).  However, none of these exceptions are

13  applicable here.  The party resisting removal has the burden of proving the existence of a

14  CAFA exception.  *King v. Great Am. Chicken Corp.*, 903 F.3d 875, 878 (9th Cir. 2018).

15       71.    The first is a discretionary exception based on the number of putative class

16  members found in the state where the action was filed.  *See* 28 U.S.C. § 1332(d)(3).

17  However, the exception only applies where the "primary defendants are citizens of the

18  State in which the action was originally filed."  Here, the action was originally filed in

19  California and, as noted above, Defendant is not a citizen of California.  Thus, this

20  exception does not apply.

21       72.    Similarly, 28 U.S.C. § 1332(d)(4) contains two further exceptions to CAFA's

22  grant of jurisdiction, based on the number of putative class members in the state in which

23  the action was filed.  However, these exceptions, too, only apply where all primary

24  defendants, or at least one defendant, is a "citizen of the State in which the action was

25  originally filed."  *See* 28 U.S.C. §§ 1332(d)(4)(A)(i)(II) and 1332(d)(4)(B).  Given that this

26  action was originally filed in California, and Defendant is not a California citizen, these

27  exceptions also do not apply.

28

## IV.   SUPPLEMENTAL JURISDICTION

73.   Under 28 U.S.C. § 1367(a):

> "Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

74.   To the extent the Court concludes it lacks original jurisdiction over any of Plaintiff's claims, it should exercise supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367(a), since each of Plaintiff's causes of action emanate from and form part of the same "case or controversy" as Plaintiff's other claims, such that they should all be tried in one action. *See Nishimoto v. Federman-Backrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990).  Considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims pleaded in the Plaintiff's FAC. *See Executive Software v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994); *see also Pinnock v. Solana Beach Do It Yourself Dog Wash, Inc.*, 2007 WL 1989635, at *3 (S.D. Cal. 2007).

75.   Here, the Court has supplemental jurisdiction over Plaintiff's non-class PAGA claim, because those claims emanate from and form part of the same "case or controversy" as Plaintiff's class claims, such that they should all be tried in one action. *See Nishimoto v. Federman-Backrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990).  Plaintiff's PAGA claims seek to recover civil penalties arising from the same exact alleged wage and hour violations alleged in Plaintiff's class claims. *See Thompson v. Target Corp.*, 2016 WL 4119937, at *12 (C.D. Cal. 2016) ("Plaintiff's PAGA and class claims concern the same misconduct by Defendant and the PAGA claims are therefore properly within the Court's supplemental jurisdiction.").

Case No.
NOTICE OF REMOVAL

Considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims pleaded in the FAC. *See Executive Software v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994); *see also Pinnock*, 2007 WL 1989635, at *3.

76.     None of the exceptions to supplemental jurisdiction found in 28 U.S.C. § 1332(c) are applicable to this case.  Plaintiff's PAGA claim does not raise novel or complex issues of State law different from the class claims, they do not substantially predominate over the named Plaintiff's individual claims, the class claims have not been dismissed, and there are no exceptional circumstances or compelling reasons for declining jurisdiction.  The exceptions enumerated in 28 U.S.C. § 1332(c) are the exclusive grounds under which the Court may decline to exercise supplemental jurisdiction.  *Exec. Software N. Am.*, 24 F.3d at 1556.

77.     For these reasons the Court has supplemental jurisdiction over any claims pleaded by Plaintiff falling outside of the Court's original jurisdiction, including but not limited to Plaintiff's claim for civil penalties under PAGA, Labor Code §§ 2699, *et seq.*  (*See* FAC, ¶¶ 86-94.).

## V.     <u>TIMELINESS OF REMOVAL</u>

78.     Under 28 U.S.C. § 1446(b), there are "two thirty-day windows during which a case may be removed–during the first thirty days after the defendant receives the initial pleading or during the first thirty days after the defendant receives a paper 'from which it may first be ascertained that the case is one which is or has become removable' if 'the case stated by the initial pleading is not removable.'"  *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 692 (9th Cir. 2005).

79.     When a complaint is "indeterminate," a defendant is under no duty to investigate the facts showing the basis for removal, and the first 28 U.S.C. § 1446(b) thirty-day window does not begin to run.  *Id.*, at 692-695.  "[T]he ground for removal must be revealed affirmatively in the initial pleading in order for the first thirty-day clock under § 1446(b) to begin."  *Id.*, at 695; see also *Taylor v. Cox Communications California, LLC*,

2016 WL 2902459 at *4 (C.D. Cal. 2016) (affirming that "materials outside the complaint do not start the thirty-day clock.").  This reasoning was more recently confirmed in *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013): "even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document."

80.     A complaint is "indeterminate" when "it is unclear from the complaint whether the case is removable, *i.e.,* the [jurisdictional facts are] unstated or ambiguous." *Harris*, 425 F.3d at 693.  Plaintiff's FAC does not affirmatively allege or otherwise state that the amount in controversy exceeds $5,000,000.  Further, it is not discernable from the face of the FAC that more than $5,000,000 was placed in controversy.  There is nothing in the FAC setting forth the amount of damages recoverable for the alleged legal violations, nor the number of times the violations allegedly occurred.  (*See generally* FAC.)  Rather, the FAC simply demands damages and other remedies in an unstated amount.  *Id.*, at Prayer For Relief.

81.     Under *Harris*, the Court must not "inquire into the subjective knowledge of the defendant, an inquiry that could degenerate into a mini-trial regarding who knew what and when.  Rather…the court [may] rely on the face of the initial pleading and on the documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper." *Harris*, 425 F.3d at 695 (*quoting Lovern v. GMC*, 121 F.3d 160, 162 (4th Cir. 1997).  Thus, the FAC is "indeterminate" and its service does not trigger the first 28 U.S.C. § 1446(b) thirty-day window to remove.  *See Roth*, 720 F.3d at 1125 (holding that complaint was "indeterminate" when "[i]t did not reveal on its face that…there was sufficient amount in controversy to support jurisdiction under CAFA."); *see also Calkins v. Google, Inc.*, 2013 U.S. Dist. LEXIS 97829, 2013 WL 3556042 at *2-3 (N.D. Cal. 2013) (holding that service of complaint did not trigger thirty-day window when amount in controversy was not affirmatively stated, even where

Case No.

NOTICE OF REMOVAL

1  defendant could have deduced the amount in controversy from documents in its

2  possession).

3        82.    As of the date of this filing, the parties have not exchanged any subsequent

4  papers determinative of the jurisdictional amount in controversy in this matter.  Where

5  neither the initial pleading nor "other paper" discloses the grounds for removal, a

6  defendant may remove at any time after it independently learns of the facts supporting

7  removal jurisdiction.  *Roth*, 720 F.3d at 1125; *see also Rea v. Michaels Stores Inc.*, 742

8  F.3d 1234, 1238 (9th Cir. 2014).  ("[T]he two 30-day periods are not the exclusive periods

9  for removal…as long as the complaint or 'an amended pleading, motion, order or other

10 paper' does not reveal that the case is removable, the 30-day time period never starts to run

11 and the defendant may remove at any time.").  Defendant, based on its investigation and

12 internal records, has since been able to determine that the amount in controversy based on

13 the allegations in Plaintiff's FAC, well exceeds the $5,000,000.00 threshold.  Thus, like in

14 *Roth*, the facts alleged in this notice support that removal is both proper and timely.

15                            **VI.    <u>JOINDER</u>**

16       83.    Defendant is not aware of any other defendant that exists and who has been

17 named in the FAC or who has been served with a summons and the FAC.  The only

18 defendants named in Plaintiff's FAC are Defendant and fictitiously named Doe defendants,

19 whose presence is disregarded for purposes of removal.

20                            **VII.    <u>VENUE</u>**

21       84.    Venue is proper in this Court pursuant to 28 U.S.C. sections 84(a), and 1391.

22                    **VIII.  <u>NOTICE TO PLAINTIFF AND STATE COURT</u>**

23       85.    This Notice of Removal will be promptly served on Plaintiff and filed with

24 the Superior Court of the State of California in and for the County of Alameda.

25       86.    In compliance with 28 U.S.C. section 1446(a), true and correct copies of all

26 "process, pleadings, and orders" from the state court action served on Defendant or filed

27 by Defendant are attached hereto as **Exhibits A through H**.

28

Case No.

NOTICE OF REMOVAL

1    WHEREFORE, having provided notice as is required by law, the above-entitled

2 action is removed from the Superior Court for the County of Alameda to this Court.

3 Dated:  August 13, 2020

4                                        Respectfully submitted,

5                                        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

6

7                                   By    _____
                                              /s/ *Andrea L. Isaacs*
8                                              BROOKE PURCELL
                                              AMANDA E. BECKWITH
9                                              ANDREA L. ISAACS

10
                                              Attorneys for Defendant
11                                            THE FINISH LINE, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.

                                                    NOTICE OF REMOVAL